WHIPPLE, J.
 

 | ¿This is an appeal from a judgment in a dog-bite case granting the motion for summary judgment filed by the owners of the property leased by the dog owner and dismissing plaintiffs claims against the homeowners with prejudice. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.
 

 FACTS AND PROCEDURAL HISTORY
 

 On August 1, 2006, plaintiff, Audrey Bradford, an employee of United Broadband, was installing cable in a home located on North 5th Street in Baton Rouge. Upon completing the work, Bradford returned to her truck, which was parked in front of a house located at 504 Lakeland Drive, which was adjacent to the house where she had been working. At that time, a man, later identified as Stan Karu-see, exited the house at 504 Lakeland Drive with two dogs, a pit bull and a
 
 *816
 
 dachshund.
 
 [1]
 
 Although Bradford asked Karusee to keep the dogs away from her, Karusee ignored Bradford and approached with the dogs. Karusee then placed his hands on Bradford, and, at that point, the dogs attacked her, biting her on the leg and the ear.
 
 [2]
 

 Bradford then instituted the instant suit for damages, naming as defendants, Karu-see, the owner of the pit bull; Debra Dixon, the owner of the dachshund; and Evelyn S. Coody, Robert Sanford Simon, and laLawrence Randall Simon, the owners of the home located at 504 Lakeland Drive, where Karusee resided. Thereafter, Coody, Robert Simon, and Lawrence Simon filed a motion for summary judgment, contending that because they had no knowledge of the dangerous propensities of the dogs, they could not be liable for the injuries caused by Karusee’s and Dixon’s dogs.
 

 Following a hearing, the trial court granted the motion for summary judgment, dismissing with prejudice Bradford’s claims against Coody, Robert Simon, and Lawrence Simon. From this judgment, Bradford appeals, contending that the trial court erred in failing to find that Coody, the owner and occupier/lessor of the land, had knowledge of the vicious nature of the dogs and in failing to consider the inconsistencies between Coody’s affidavit and deposition while improperly determining the facts based on her credibility. Because these issues are interrelated, we will discuss them together, rather than individually.
 

 DISCUSSION
 

 Burden of Proof and Standard of Review for Summary Judgment
 

 A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
 

 The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. LSA-C.C.P. art. 966(A)(2). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to a material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
 

 I/Fhe mover bears the burden of proving that he is entitled to summary judgment. LSA-C.C.P. art. 966(C)(2). However, if the mover will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent’s claim, action, or defense. LSA-C.C.P. art. 966(C)(2). If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the nonmoving party must produce factual support sufficient to establish that
 
 *817
 
 he will be able to satisfy his evidentiary burden at trial. LSA-C.C.P. art. 966(C)(2). If the mover has put forth supporting proof through affidavits or otherwise, the adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. LSA-C.C.P. art. 967(B).
 

 In ruling on a motion for summary judgment, the trial court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact.
 
 Hines v. Garrett,
 
 2004-0806 (La.6/25/04), 876 So.2d 764, 765. Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor.
 
 Willis v. Medders,
 
 2000-2507 (La.12/8/00), 775 So.2d 1049, 1050.
 

 In determining whether summary judgment is appropriate, appellate courts review evidence
 
 de novo
 
 under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate.
 
 See 5Barnett v. Watkins,
 
 2006-2442 (La.App. 1st Cir.9/19/07), 970 So.2d 1028, 1033,
 
 writ denied,
 
 2007-2066 (La.12/14/07), 970 So.2d 537.
 

 Landlord’s Liability for Damage Caused by Tenant’s Animal
 

 Although a landlord is strictly liable for vices or defects of his building, he is not strictly liable to a third person for injuries caused by his tenant’s animal. The strict liability of the animal owner pursuant to LSA-C.C. art. 2321 cannot be imputed to a non-owner.
 
 Windham v. Murray,
 
 2006-1275 (La.App. 4th Cir.5/30/07), 960 So.2d 328, 332;
 
 Tumbow v. Wye Electric, Inc.,
 
 38,948 (La.App. 2nd Cir.9/22/04), 883 So.2d 469, 471-472;
 
 Murillo v. Hernandez,
 
 00-1065 (La.App. 5th Cir.10/31/00), 772 So.2d 868, 871.
 

 However, the landlord may still be liable for negligence pursuant to LSA-C.C. arts. 2315 and 2316 if there is a violation of a duty and that violation is a cause-in-fact of an injury. Courts have held that where the landlord had actual knowledge of the animal’s vicious propensity, a duty of care arises which may lead to liability pursuant to LSA-C.C. art. 2316 for violation of that duty.
 
 Windham,
 
 960 So.2d at 332;
 
 Turnbow,
 
 883 So.2d at 472;
 
 Murillo,
 
 772 So.2d at 871.
 

 In support of their motion for summary judgment, Coody, Robert Simon, and Lawrence Simon filed their own affidavits. In their affidavits, Coody and Robert Simon attested that: (1) at the time of the attack, they were co-owners of the property in question; (2) they did not own the pit bull or dachshund involved in the attack; (3) although they recalled knowing that there was a pit bull on the premises, on the “infrequent” occasions they had previously observed the pit bull, it acted calm and friendly; and (4) they were unaware of any violent, dangerous, or aggressive tendencies on the part of the pit bull and had never witnessed any such behavior by the dog which | ¿would give rise to any questions about it being potentially violent, dangerous, or aggressive. Lawrence Simon attested that while he also was a co-owner of the house, he did not own either dog and was unaware of any violent, dangerous, or aggressive tendencies on the part of the “subject animal” and had never witnessed any behavior on the “animal’s” part which would give rise to any questions about it potentially being violent, dangerous, or aggressive.
 

 In opposition to the motion, Bradford filed the deposition of Coody and various affidavits. Coody testified that, at the
 
 *818
 
 time of the attack, she lived in the home located at 504 Lakeland Drive, which she owned with her two nephews, Robert and Lawrence Simon. At some time during the year 2005, Coody began inquiring at the local grocery store about whether anyone would be interested in earning some money by painting her house. Karusee then began working for Coody on her home, and, eventually, Coody agreed that Karusee could live upstairs at her home while he performed work for her. Coody allowed Karusee to reside in the house without paying rent because he was painting the house and performing other odd jobs for her. Coody was aware that Karu-see was bipolar, and she assisted him in going to doctor’s visits and in getting his medication for the disorder. She was also aware that he drank alcohol, but thought he was a “sociable drinker.”
 
 [3]
 

 About six months before the attack, Ka-rusee found the pit bull, and Coody allowed him to keep it at the house. According to Coody, Karusee told her that he found the dog on the levee. The pit bull was kept in the feneed-in backyard and upstairs, which the dog could access from the |7backyard. The fence had a “Beware of Dog” sign on it that Coody had installed because of a previous tenant’s dog.
 

 With regard to the dachshund, this dog was owned by a friend of Karusee, Debra Dixon. Although Dixon did not live at Coody’s house, the dachshund stayed both at Coody’s house and at Dixon’s house, and Coody estimated that the dachshund actually spent more time at her house than at Dixon’s.
 

 Coody testified that she saw the pit bull on a daily basis and the dachshund on a regular basis when it was at her home (contrary to her statement in her affidavit that she saw them infrequently), and that she had never witnessed any behavior suggesting that the dogs were dangerous and was unaware of any violent, dangerous, or aggressive tendencies on the part of these dogs.
 

 However, in her affidavit filed in opposition to the motion for summary judgment, Bradford attested that when Coody, who was not home at the time of the attack, arrived at the scene, she began berating Karusee and stated to him, “Why did you let those damn dogs out of the gate. I have told you over and over again to keep the dogs in the fence. You know those dogs can bite.” Bradford farther attested that she spoke to Coody the day after the incident, and during that conversation, Coody told her that Coody had observed the pit bull chasing other people and that was why Coody was concerned. Coody further indicated to Bradford during the conversation that Karusee was bipolar. According to Bradford, Coody also stated to her that she had been telling Karusee not to let the dogs out because they would bite someone.
 

 Bradford also submitted the affidavit of Ernest Veals, who was employed by United Broadband and was installing cable with Bradford on |8the day of the dog attack. Veals attested that when Coody arrived at the scene after the attack, she immediately began arguing with Karusee and told Karusee that she had told him many times to watch the dogs and restrain them because they would bite someone. According to Veals, Coody further stated that she had told Karusee on numerous occasions to put the dogs up because she knew something like this would happen.
 

 Bradford also attested that after the attack, Karusee told her that the pit bull had been taken from a “crack house” and had been abused. Veal similarly attested
 
 *819
 
 that, at the scene, he heard Karusee say that the pit bull had come from a “crack house, had been abused, and he had raised the dog.” When questioned in her deposition about whether Karusee had ever told her that the pit bull had been abused, Coody responded, “I don’t know.”
 

 With regard to the statements by Bradford and Veal that they heard Coody say that she had told Karusee to keep the dogs restrained up because they would bite someone, Coody denied that she made such a statement. Coody acknowledged that she had berated Karusee at the scene for taking the dogs out without a leash. When asked if she also told him that he knew the dogs could bite, Coody responded, “Well, I told them every dog could bite. They have teeth.”
 

 Considering the foregoing and the record as a whole, we conclude that the trial court erred, in part, in granting the motion for summary judgment. With regard to Bradford’s claims against Robert and Lawrence Simon, these defendants presented affidavits, stating that they had no knowledge of any dangerous propensities of the dogs in question, and Bradford offered no evidence to controvert those statements. Thus, Robert Simon and Lawrence Simon established them entitlement to summary judgment.
 

 1¡¿However, with regard to Coody, the evidence offered in support of and in opposition to the motion for summary judgment reveals a genuine issue of material fact as to Coody’s knowledge of the dogs’ dangerous propensities. Specifically, there are glaring conflicts in the testimony of Coody, Bradford, and Veal regarding Coody’s statements to Karusee at the scene of the incident as to whether the dogs would bite someone if unleashed. Moreover, there is a conflict in the testimony of Coody and Bradford regarding Coody’s alleged statement to Bradford that Coody had previously witnessed the dogs chasing other people. Finally, there is a conflict in Coody’s own testimony in her deposition and affidavit as to how often she saw the dogs and other important facts relevant to her knowledge of their dangerous propensities.
 

 The inconsistencies in the testimony as to Coody’s knowledge of the dangerous propensities of these dogs, together with Coody’s uncontradicted knowledge of Ka-rusee’s bipolar condition and consumption of alcoholic beverages, are at the heart of Bradford’s theory of recovery against Coody,
 
 ie.,
 
 negligence on the part of Coody in allowing such dogs to remain on the premises or to remain under the care of Karusee.
 
 See generally Windham,
 
 960 So.2d at 333. Resolution of these conflicts in the testimony is inappropriate on summary judgment. Accordingly, we conclude that the trial court erred in granting the motion for summary judgment as to Coody and in dismissing Bradford’s claims against her.
 
 See George v. Paffen,
 
 06-890 (La.App. 5th Cir.5/15/07), 957 So.2d 861,
 
 reversed,
 
 2007-1430 (La.10/26/07), 966 So.2d 562, where the Louisiana Supreme Court reversed the appellate court’s affirmation of summary judgment, as plaintiffs had presented evidence that a genuine issue of material fact existed as to whether the landlord had knowledge of the dog’s vicious propensities.
 

 hnCONCLUSION
 

 For the above and foregoing reasons, the portion of the May 2, 2008 judgment granting the motion for summary judgment of Robert Sanford Simon and Lawrence Randall Simon and dismissing with prejudice Audrey Bradford’s claims against Robert Simon and Lawrence Simon is affirmed. The portion of the judgment granting the motion for summary judgment as to Evelyn Coody and dismiss
 
 *820
 
 ing with prejudice Audrey Bradford’s claims against Evelyn Coody is reversed. In all other respects, the judgment is affirmed. This matter is remanded to the trial court for further proceedings consistent with the views expressed herein.
 

 Costs of this appeal are assessed against Evelyn Coody.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 [1]
 

 . The spelling of Karusee’s name is unclear from the record. In the petition, it is spelled "Karusee,” but it is also spelled "Karusse” in an affidavit in the record. The record does not contain an answer filed by this defendant. For purposes of this opinion, we spell his name as it appears in the petition.
 

 [2]
 

 . These facts were taken from deposition testimony and affidavits submitted in connection with the motion for summary judgment and were undisputed.
 

 [3]
 

 . On the day of the dog attack, Karusee had apparently been consuming alcohol.