# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2024 CA 0195

FERDINAND BONANO

VERSUS

DOCAR SALES, INC., DOCAR POWERTRAIN SPECIALISTS, L.L.C.,
DJL PROPERTIES, L.L.C., DOCAR TRUCK PARTS AND EQUIPMENT, INC.

Judgment Rendered: **OCT 2 2 2024**

* * * * * *

On Appeal from the Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket No. 2021-13834

Honorable William H. Burris, Judge Presiding

* * * * * *

| | |
|---|---|
| Elizabeth W. Ramirez<br>Covington, Louisiana | Counsel for Plaintiff/Appellant<br>Ferdinand Bonano |
| Morgan J. Wells, Jr.<br>Metairie, Louisiana<br>-and-<br>Shelly G. Wells<br>Mandeville, Louisiana | Counsel for Defendants/Appellees<br>Docar Truck Parts and Equipment, L.L.C.<br>and Docar Powertrain Specialists, L.L.C. |
| Stephen M. DuValle<br>John W. Martinez<br>Gregory D. Maricle<br>Mandeville, Louisiana<br>-and-<br>Rebecca G. Bush<br>St. Paul, Minnesota | Counsel for Defendants/Appellees<br>Docar Sales, Inc. and DJL Properties, L.L.C. |

* * * * * *

**BEFORE: McCLENDON, WELCH, AND LANIER, JJ.**

**McCLENDON, J.**

In this trip-and-fall case, plaintiff appeals a summary judgment dismissing his claims against all defendants. For the reasons that follow, we reverse in part and affirm in part.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, Ferdinand Bonano, filed a petition seeking damages for injuries he sustained in a trip-and-fall accident that occurred on November 2, 2020. Plaintiff alleged that, as he was entering Docar Truck Parts and Equipment, Inc., a commercial business establishment located at 1876 N. Collins Boulevard, Covington, Louisiana, he tripped and fell due to a hazard and defect created by a six-inch "step up" at the doorway and an improperly installed threshold. Plaintiff named as defendants the commercial business establishment, Docar Truck Parts and Equipment, Inc., and its successor, Docar Powertrain Specialists, L.L.C. (the business), as well as the owner of the 1876 N. Collins Boulevard property, Docar Sales, Inc., and its successor, DJL Properties, L.L.C. (the property owner).

In the appeal before us, plaintiff challenges a single judgment that granted two related motions for summary judgment and dismissed plaintiff's claims against all defendants. On August 4, 2023,[1] the property owner filed a motion for summary judgment seeking dismissal of plaintiff's claims on the basis that plaintiff would be unable to meet his burden of proof on the issue of liability (summary judgment on the issue of liability). The property owner offered plaintiff's deposition in support of its motion, arguing plaintiff's deposition testimony established that he could not identify the cause of his fall or any defective condition for which the property owner would be liable. On August 14, 2023, the business filed a motion purporting to "adopt" the property owner's summary judgment motion on the issue of liability, but did not attach additional argument or evidence ("me too" summary judgment motion[2]). The business's "me too" summary

---

[1] Effective August 1, 2023, LSA-C.C.P. art. 966 was amended. See 2023 La. Acts, No. 317, s 1 (eff. Aug.1, 2023). Therefore, LSA-C.C.P. art. 966, as amended, is applicable herein.

[2] The business's "me too" summary judgment motion and supporting memorandum purported to "adopt by reference the Motion for Summary Judgment, Memorandum in Support of Motion for Summary Judgment, Statement of Uncontested Material Facts and legal elements, and exhibits filed by [the property owner], in support of [the business's] Motion for Summary Judgment." Motions wherein a party attempts to adopt and incorporate the evidence, authorities, and arguments set forth in another motion simply by

2

judgment motion on the issue of liability asserted that it was filed in the alternative to a motion for summary judgment the business had previously filed on July 17, 2023, wherein the business sought dismissal of plaintiff's claims on the basis that the business did not own the premises where the accident occurred, and therefore, did not owe plaintiff a duty (summary judgment on the issue of duty).

Plaintiff filed a memorandum in opposition to the three motions for summary judgment on October 9, 2023. The property owner filed a reply memorandum in support of its summary judgment motion on the issue of liability on October 19, 2023.[3] The business filed a reply memorandum in support of its "me too" summary judgment motion on October 19, 2023.[4]

The trial court heard and granted all three motions for summary judgment on October 25, 2023. On November 8, 2023, the trial court signed a written judgment granting the property owner's summary judgment on the issue of liability, granting the business's "me too" summary judgment motion on the issue of liability, and dismissing

---

reference thereto have been referred to as "me too" motions. See **Ricketson v. McKenzie**, 2023-0314 (La.App. 1 Cir. 10/4/23), 380 So.3d 1, 7.

[3] Therein, the property owner argued that plaintiff failed to comply with the trial court's scheduling order regarding the identification of expert witnesses and production of expert opinions, photographs, or other documents by September 19, 2023. The property owner argued that plaintiff should not be permitted to rely on expert opinion, photos, or other documents, because same would be prejudicial to the property owner.

The property owner specifically opposed any expert material or opinions from Carlos Ramirez, arguing plaintiff identified Mr. Ramirez as a fact witness rather than an expert witness and failed to timely disclose Mr. Ramirez as an expert.

The property owner also specifically objected to Dennis Howard's October 6, 2023 affidavit, arguing it had "craftily woven Mr. Howard's expert opinions into it," and was essentially an untimely expert report. The property owner further objected to Mr. Howard's affidavit because it relied on the deposition testimony of Dobby Lachney, the owner of the Docar entities, and Mr. Lachney's testimony directly contradicted George Schayer's testimony that the metal threshold of the doorway was replaced. Thus, the property owner argued that plaintiff's untimely production of Mr. Howard's affidavit prejudiced the property owner, as it is now precluded from disputing Mr. Howard's findings by LSA-C.C.P. art. 966(B)(3). The property owner further argued that Mr. Howard's affidavit established that Mr. Howard was capable of providing an expert report, and therefore, plaintiff should not be permitted to substitute Mr. Patin in his place.

Finally, the property owner objected to the affidavit and attached expert report of Fabian Patin. The property owner argued that plaintiff failed to timely disclose Mr. Patin as an expert, and that Mr. Patin's report relied on information gathered by Mr. Ramirez. The property owner asserted, "[p]laintiff is trying to introduce this expert report into the record without proper notice or procedure, circumventing the rules of evidence."

[4] Therein, the business objected to evidence plaintiff filed in opposition to the motion for summary judgment, specifically the affidavits of Mr. Ramirez and Mr. Patin. The business contended that both affidavits contained "unreliable and inadmissible opinions that are not proper under [LSA-C.E.] Article 702 to support or oppose a motion for summary judgment." Regarding the affidavit of Mr. Ramirez, the business argued that it failed to set forth any reliable principles on which Mr. Ramirez based his opinion; that it lacked factual support for Mr. Ramirez's opinion other than that he visited the site to take photographs and measurements; and that Mr. Ramirez practiced in a wholly unrelated engineering filed and did not have any specialized knowledge relevant to the issues in this case.

3

plaintiff's claims against all defendants with prejudice. On the same day, the trial court signed a second written judgment granting the business's summary judgment on the issue of duty and dismissing plaintiff's claims against the business with prejudice.

Plaintiff requested reasons for judgment regarding the property owner's motion for summary judgment on the issue of liability. The trial court issued written reasons for judgment on December 15, 2023, which provided:

> This matter came before the Court on October 25, 2023, on motions for summary judgment, one filed by defendants, [the property owner], and the others by [the business]. After reviewing the pleadings, the memoranda in support and in opposition to the Motions for Summary Judgment and the exhibits attached thereto, as well as the applicable law and jurisprudence, the Court found that the defendants established that the plaintiff would be unable to carry his burden of proof to establish the cause of his fall at a trial on the merits.

Plaintiff has appealed both of the November 8, 2023 judgments separately.[5] The sole judgment at issue in this appeal is the November 8, 2023 judgment that granted the summary judgment motions on the issue of liability in favor of all defendants and dismissed plaintiff's claims against all defendants with prejudice.

## SUMMARY JUDGMENT LAW

A ruling on a motion for summary judgment is reviewed under a *de novo* standard, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. **Corbajal v. Chris Owens French Quarter Parade, LLC**, 2024-00191 (La. 5/21/24), 385 So.3d 236, 237-38. Pursuant to LSA-C.C.P. art. 966(D)(1), the burden on the party moving for summary judgment "does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." **Corbajal**, 385 So.3d at 238. When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations

---

[5] Plaintiff filed two separate motions for appeal on November 30, 2023. Prior to oral arguments, it became apparent that the record for 2024-CA-0195 did not contain all of the pleadings required for this court to review the matter before us. Thus, the parties made a joint oral motion to reference the 2024-CA-0194 record in 2024-CA-0195, which this court granted on August 8, 2024. Additionally, due to typographical errors, the brief for 2024-CA-0194 was filed under 2024-CA-0195, and vice versa. Plaintiff filed a written motion to correct the typographical errors on October 8, 2024, which this court also granted.

4

or denials of his pleadings, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. LSA-C.C.P. art. 967(B); **Corbajal**, 385 So.3d at 238. Once a motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. **Corbajal**, 385 So.3d at 238.

## PLAINTIFF'S CLAIMS

Plaintiff's claims against the defendants are based upon delictual liability pursuant to LSA-C.C. art. 2315, 2317, 2317.1, and LSA-R.S. 9:2800.6, Louisiana's Merchant's Liability Statute. Louisiana Civil Code article 2315(A) provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Article 2317 states: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by . . . things we have in our custody." **Farrell v. Circle K Stores, Inc.**, 2022-00849 (La. 3/17/23), 359 So.3d 467, 472. Specifically regarding premises liability, LSA-C.C. art. 2317.1[6] provides that the plaintiff has the burden of proving: (1) the property which caused the damage was in the custody of the defendant; (2) the property had a condition that created an unreasonable risk of harm; (3) the unreasonably dangerous condition was a cause in fact of the resulting injury; and (4) the defendant had actual or constructive knowledge of the risk. **McCoy v. Manor**, 2018-1228 (La.App. 1 Cir. 5/9/19), 277 So.3d 344, 348. When seeking relief under LSA-C.C. art. 2317.1, the existence of a defect may not be inferred solely from the fact that an accident occurred; rather, the plaintiff must prove that a defect existed and that the defect caused the plaintiff's damages. See **McCoy**, 277 So.3d at 348.

Ultimately, whether a claim arises in negligence under LSA-C.C. art. 2315 or in premises liability under LSA-C.C. art. 2317.1, courts utilize the same traditional duty/risk

---

[6] Louisiana Civil Code Article 2317.1 provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

analysis to determine whether liability exists. See **Farrell**, 359 So.3d at 473. Under the duty/risk analysis, the plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and, (5) proof of actual damages (the damages element). If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable. **Farrell**, 359 So.3d at 473.

Likewise, the duty/risk analysis applies when determining liability under Louisiana's Merchant's Liability Statute, LSA-R.S. 9:2800.6. See **White v. Wal-Mart Stores, Inc.**, 97-0393 (La. 9/9/97), 699 So.2d 1081, 1084 n.3. Louisiana Revised Statutes 9:2800.6(B) provides:

> In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

Thus, the mandatory plain language of LSA-R.S. 9:2800.6 provides that, in order to prevail on a negligence claim brought under the statute, the claimant must prove the three enumerated requirements set forth therein, in addition to "all other elements" of the claimant's cause of action. While there is some overlap, because a claim under LSA-R.S. 9:2800.6 is a negligence claim, these "other elements" are duty, breach, cause in fact, risk and harm within the scope of duty, and actual damages. See **White**, 699 So.2d at 1084 n.3 ("[I]n addition to all other elements of his cause of action, a claimant must

6

also prove each of the enumerated requirements of Section (B)")[7]; see also **Bearden v. K & A of Monroe, LLC**, 55,746 (La.App. 2 Cir. 7/17/24), ___ So.3d ____, ____, 2024 WL 3434536, *4 ("[I]t must be noted that all elements of an ordinary negligence claim must be satisfied in addition to the specific requirements of the statute"); **Dotson v. Brookshire Grocery Co.**, 2004-83 (La.App. 3 Cir. 5/12/04), 872 So.2d 1283, 1285 ("In order to prove merchant liability in a slip and fall case, the plaintiff must prove, in addition to the usual negligence requirements (duty, breach, cause in fact, and damages), those elements found in [LSA-]R.S. 9:2800.6(B)).

## DISCUSSION

### *The Property Owner's Summary Judgment Motion on the Issue of Liability*

We first address that portion of the trial court's November 8, 2023 judgment that granted summary judgment on the issue of liability in favor of the property owner. The property owner specifically sought summary judgment on the basis that plaintiff lacked factual support for his claims that the property owner was liable for plaintiff's injuries. As the mover on the motion for summary judgment, the property owner bore the burden of proof. See LSA-C.C.P. art. 966(D)(1). However, because the property owner would not bear the burden of proof at trial, it was not required to negate all essential elements of plaintiff's claim. Rather, the property owner was required to point out to the court that there was an absence of factual support for the question of liability put at issue in its summary judgment motion. See LSA-C.C.P. art. 966(D)(1). See **Bruno v. Blue Bayou Water Park, LLC**, 2023-0675 (La.App. 1 Cir. 12/29/23), 381 So.3d 802, 808.

In support of the property owner's summary judgment motion on the issue of liability, the property owner offered plaintiff's deposition testimony. During plaintiff's deposition, he testified he considered himself in good physical condition, with no physical limitations or compromised abilities, prior to the accident. On the day of the accident, plaintiff went to the business to make a payment, as he had done numerous times before. According to plaintiff, he always entered the business through the same doorway. He had

---

[7] Although **White**, 699 So.2d 1081, applied a previous version of LSA-R.S. 9:2800.6, the relevant language has not changed.

no history of problems with the doorway and did not notice any problems with the doorway the day he fell. When asked to describe the accident, plaintiff stated:

> All I did was remember walking through the door. In a split second I went flying through the - - out - - my hands and - - I hit the side of my head, cut my hand. My hand was bleeding. Kind of dazed me. I was kind of dazed. And, uh, when I kinda got around right there they - - some gentleman, I don't know, they said he was an E.M.T., ex-E.M.T., he picked me up and sat me on the - - sat me up.

In support of its assertion that plaintiff could not provide any evidence as to why he fell, the property owner specifically referenced the following exchanges between counsel for the business and plaintiff:

Q. Do you know why you fell?

A. No, ma'am. I just - - It just happened so fast, you know.

Q. So you don't have any idea what caused you to fall?

A. No, ma'am.

\*\*\*

Q. In the petition that you filed there are allegations related to the cylinder activated door. Did that contribute to your fall?

A. I don't know to tell you the truth.

Q. Do you recall that on the day, or whether or not you did this, on the day when you were entering the premises and you stepped up to enter, do you recall whether or not you hesitated in the doorway?

A. No. I just went in like normally.

Q. But you have no idea what happened.

A. No, ma'am.

Q. Did you forget or did you ever know?

A. No, I didn't forget. I remember hurting in the fall.

Q. Okay.

A. Like I said, this happened so fast.

Thus, the property owner contended that plaintiff's deposition testimony established plaintiff could not identify the cause of his fall, nor could he prove the existence of a defect or describe an unreasonably dangerous condition for which the defendants would be liable.

Having carefully reviewed plaintiff's deposition in its entirety, we agree. When asked to describe his fall, plaintiff did not attribute it to the step-up, the door, or the

threshold. When asked directly what caused his fall, plaintiff repeatedly denied any knowledge of said cause. This testimony illustrated that plaintiff was unable to describe with any certainty the mechanism of the event that caused his injuries. Thus, the property owner successfully pointed out the absence of factual support for the cause-in-fact element of plaintiff's claim, which is an essential element of plaintiff's claim under LSA-C.C. art. 2315, 2317, 2317.1, and LSA-R.S. 9:2800.6. See **Farrell**, 359 So.3d at 473 and **White**, 699 So.2d at 1084 n.3. Accordingly, the burden shifted to plaintiff to establish the existence of a genuine issue of material fact or that defendants were not entitled to judgment as a matter of law. See LSA-C.C.P. art. 966(D)(1). See **Bruno**, 381 So.3d at 809-10.

In opposition to the property owner's motion for summary judgment, plaintiff offered excerpts of plaintiff's uncertified medical records, excerpts of plaintiff's March 2, 2023 deposition, and plaintiff's October 10, 2023 affidavit. Plaintiff also offered the affidavit of Carlos A. Ramirez, with referenced photographs; the affidavit of Dennis Howard; the affidavit and expert report of Fabian Patin; and excerpts from the depositions of George Schayer, Darrin Guzzardo,[8] and Joe Pertuit. Having thoroughly reviewed the documents plaintiff offered to controvert the property owner's motion for summary judgment, we find that none of them contained evidence sufficient to establish that plaintiff would be able to satisfy his evidentiary burden of proof at trial.

In plaintiff's affidavit, which was executed after his deposition, he attested that he was eighty-four years old on the date of his accident. According to plaintiff, during previous visits to the business and on the day of his accident, he did not observe any obstacles that would cause him to fall. Plaintiff specifically attested that, after he opened the front entrance door and held it open so he could walk in, "I remember that my foot got caught in the door. To the best of my recollection, it was my right foot. My shoe was caught and was left behind in the door." Plaintiff's affidavit testimony that his foot "got caught in the door" clearly contradicts his prior deposition denying knowledge of the cause of his fall. This court has consistently held that a supplemental self-serving affidavit,

---

[8] Mr. Guzzardo's first name is spelled differently at certain points in the record. Herein, we use the spelling reflected on the cover sheet of his deposition transcript.

which contradicts earlier deposition testimony, is not sufficient to create an issue of fact precluding summary judgment. See **McCastle-Getwood v. Professional Cleaning Control**, 2014-0993 (La.App. 1 Cir. 1/29/15), 170 So.3d 218, 222; **Terrebonne v. Floyd**, 1999-1036 (La.App. 1 Cir. 5/23/00), 767 So.2d 754, 757.

Plaintiff attempts to explain the inconsistencies between his deposition and affidavit testimony by blaming those inconsistencies on his age and cognitive decline in the years following his fall. In support of this argument, he relies on his uncertified medical records, which contain references to plaintiff reporting that he fell as a result of his foot being caught in a door, and on deposition testimony wherein he stated that he answered the medical providers' questions regarding his fall as well as he could. However, while certified medical records are included in the exclusive list of documents that may be filed and referenced in support of or in opposition to a motion for summary judgment, uncertified medical records are not.[9] See LSA-R.S. 966(A)(4)(a); **Robinson v. Cheng, LLC**, 2022-1130 (La.App. 1 Cir. 7/10/23), 372 So.3d 7, 10. Thus, plaintiff's uncertified medical records are not proper summary judgment evidence, and we may not consider them in deciding the merits of the property owner's motion for summary judgment on the issue of liability. Further, plaintiff's claims of cognitive decline directly contradicts plaintiff's statement during his deposition that he had not forgotten what happened on the day of his accident. Consequently, plaintiff's affidavit was not sufficient evidence to establish that he would be able to satisfy his evidentiary burden of proof at trial, and we cannot consider plaintiff's uncertified medical records. See **McCastle-Getwood**, 170 So.3d at 222.

Regarding the excerpts offered from the depositions of Mr. Schayer, Mr. Guzzardo, and Mr. Pertuit, we find no testimony therein that raises a genuine issue of material fact regarding the cause of plaintiff's fall. Mr. Schayer testified that on the day of the accident,

---

[9] Under the version of LSA-C.C.P. art. 966 in effect prior to its amendment by 2023 La. Acts, No. 317 (Act 317), LSA-C.C.P. art. 966(D)(2) mandated that a court "shall consider any documents to which no objection is made." However, Act 317 removed the directive to consider any documents to which no objection is made, and LSA-C.C.P. art. 966(D)(2) now provides that a court "shall consider only those documents filed or referenced in support of or in opposition to the motion for summary judgment[.]" We must assume the legislature intended for the change in wording to change the law. See **Auricchio v. Harriston**, 2020-01167 (La. 10/10/21), 332 So.3d 660, 663, citing **Borel v. Young**, 2007-0419 (La. 11/27/07), 989 So.2d 42.

10

he was seated at his desk when he saw plaintiff open the door and fall, "face down." However, Mr. Schayer could only see plaintiff's upper body as he entered and fell. Mr. Guzzardo and Mr. Pertuit testified they did not witness plaintiff's fall, but were asked to assist plaintiff afterwards. Mr. Pertuit stated that plaintiff was on the floor, "right past the door[,]" when he and Mr. Guzzardo arrived in the lobby, and they helped plaintiff up. Mr. Pertuit recalled that one of plaintiff's shoes was off, and was "[i]n front of [plaintiff]." Mr. Guzzardo, who served twenty-one years with St. Tammany Fire District 12 and was trained as an EMT, assessed plaintiff after his fall and determined he was "alert to person, place, and time[,]" and found no signs that plaintiff had suffered a stroke or a TIA. Mr. Pertuit did not ask plaintiff what happened, but recalled plaintiff saying he was "okay."

Plaintiff also offered the affidavit of Mr. Ramirez, who attested he was an engineer but was offered as a fact witness; Mr. Howard, who attested he is a Certified Safety Professional with experience in identifying hazards affecting the safety of individuals in various workplaces and other settings; and Mr. Patin, who attested he is a licensed architect and was consulted to give his expert opinion on the cause of plaintiff's fall. However, all of these affidavits presented opinions based in part on the presumption that plaintiff fell because his foot was caught in the door. As discussed, plaintiff's uncertified medical records were not proper summary judgment evidence, and plaintiff's affidavit contradicting his earlier deposition testimony was not sufficient to create an issue of fact precluding summary judgment. See LSA-R.S. 966(A)(4)(a) and **McCastle-Getwood**, 170 So.3d at 222. Therefore, plaintiff failed to establish that he would be able to satisfy his evidentiary burden of proof at trial as to the element of causation. See LSA-C.C.P. art. 966(D)(1). Accordingly, we are constrained to find that the trial court properly granted summary judgment dismissing plaintiff's claims against the property owner.

Given our ruling that plaintiff cannot establish the element of causation, we pretermit any further discussion of the breach of the duty element, the scope of the duty element, and damages elements herein. See **Farrell**, 359 So.3d at 479.[10] That portion of

---

[10] We note that, although plaintiff does not explicitly argue that the doctrine of *res ipsa loquitur* applies, plaintiff's arguments seem to implicitly seek application of the doctrine. Regardless, we do not find that *res ipsa loquitor* applies in this case. *Res ipsa loquitur* means "the thing speaks for itself." **Garrett v. Department of Children & Family Services**, 2023-0412 (La.App. 1 Cir. 11/9/23), 379 So.3d 74, 81 n.6. It is a rule of circumstantial evidence that allows a court to infer negligence on the part of the defendant if

the November 8, 2023 judgment granting summary judgment on the issue of liability in favor of the property owner, and dismissing plaintiff's claims against the property owners, is affirmed.

### *The Business's "Me Too" Summary Judgment Motion on the Issue of Liability*

We next address that portion of the trial court's November 8, 2023 judgment that granted summary judgment on the issue of liability in favor of the business. The business's motion for summary judgment on the issue of liability provided, in pertinent part:

> The reasons in support of this Motion are set forth in the Motion for Summary Judgment, Memorandum in Support of Motion for Summary Judgment, Statement of Uncontested Material Facts and legal elements, and exhibits filed by [the property owner], which [the business] adopt[s] in support of [its] Motion.

The business's supporting memorandum provided, in pertinent part:

> In support of this Motion for Summary Judgment, [the business] adopt[s] by reference the Motion for Summary Judgment, Memorandum in Support of Motion for Summary Judgment, Statement of Uncontested Material Facts and legal elements, and exhibits filed by [the property owner], in support of [its] Motion for Summary Judgment.

As set forth above, the business did not put forth any arguments in its motion or memorandum, nor did it file any evidence in support of its motion. Such motions, wherein a party attempts to adopt and incorporate the evidence, authorities, and arguments set forth in another motion simply by reference thereto, have been referred to as "me too" motions. See **Ricketson v. McKenzie**, 2023-0314 (La.App. 1 Cir. 10/4/23), 380 So.3d 1, 7.

When applying the version of LSA-C.C.P. art. 966 in effect prior to August 1, 2023, this court has held that such "me too" motions did not comply with LSA-C.C.P. art. 966. See **Ricketson**, 380 So.3d at 4-5, 7, citing **Troncoso v. Point Carr Homeowners**

---

the facts indicate the defendant's negligence, more probably than not, caused the injury. **Spott v. Otis Elevator Co.**, 601 So.2d 1355, 1362 (La. 1992). *Res ipsa loquitur* is applicable only when three requisite elements are met: (1) the injury is the kind which ordinarily does not occur in the absence of negligence; (2) the evidence must sufficiently eliminate other more probable causes of the injury; and (3) the negligence of the defendant must fall within the scope of his duty to the plaintiff. **Garrett**, 379 So.3d at 82. As there are many reasons one can fall while walking other than negligence, the first requirement for the application of *res ipsa loquitur* is not met in this case. See **Linnear v. CenterPoint Energy Entex/Reliant Energy**, 2006-3030 (La. 9/5/07), 966 So.2d 36, 44; **Crucia v. State Farm Ins. Co.**, 98-1929 (La.App. 1 Cir. 9/24/99), 754 So.2d 270, 273. This conclusion is also consistent with the rule that *res ipsa loquitur* does not apply in cases arising under LSA-R.S. 9:2800.6. See **Woods v. Winn-Dixie Stores, Inc.**, 2022-0191 (La.App. 1 Cir. 9/16/22), 353 So.3d 182, 189 n.6.

12

**Association**, 2022-0530 (La.App. 1 Cir. 1/10/23), 360 So.3d 901, 915. Specifically, these "me too" motions did not comply with LSA-C.C.P. art. 966(D)(2), which provided that the court may consider "only those documents filed in support of or in opposition to the motion for summary judgment" and did not permit consideration of documents elsewhere in the record. Consequently, a party that failed to file documents supporting its summary judgment motion could not satisfy its initial burden of proof. See **Ricketson**, 380 So.3d at 4-5, 6-7, citing **Troncoso**, 360 So.3d at 915.

However, shortly before the summary judgment motions at issue in this appeal were filed, LSA-C.C.P. art. 966 was amended by 2023 La. Acts. No. 317, § 1, effective August 1, 2023 (Act 317).[11] As amended by Act 317, LSA-C.C.P. art. 966(A)(4)(b) provides that a document "previously filed into the record" may be "specifically referenced and considered in support of or in opposition to a motion for summary judgment by listing with the motion or opposition the document by title and date of filing." See **McDonald v. D'Amico**, 2023-0884 (La.App. 1 Cir. 3/22/24), 385 So.3d 1162, 1167 n.7, writ denied, 2024-00444 (La. 6/19/24), 386 So.3d 674. In addition, LSA-C.C.P. art. 966(A)(4)(b) currently requires that "a copy of the entire document with the pertinent part designated and the filing information" be furnished to the court and the opposing party, "concurrently with the filing of the motion or opposition[.]" See LSA-C.C.P. art. 966(A)(4)(a) and (A)(4)(b); see also **Ricketson**, 380 So.3d at 5. Consistent with these changes, Act 317 amended LSA-C.C.P. art. 966(D)(2) to provide that "[t]he court shall consider only those documents filed or referenced in support of or in opposition to the motion for summary

---

[11] As amended by Act 317, LSA-C.C.P. art. 966(A)(4)(b) now provides:

> Any document listed in Subsubparagraph (a) of this Subparagraph previously filed into the record of the cause may be specifically referenced and considered in support of or in opposition to a motion for summary judgment by listing with the motion or opposition the document by title and date of filing. The party shall concurrently with the filing of the motion or opposition furnish to the court and the opposing party a copy of the entire document with the pertinent part designated and the filing information.

Act 317 also amended LSA-C.C.P. art. 966(D)(2), which now provides:

> The court shall consider only those documents filed or referenced in support of or in opposition to the motion for summary judgment but shall not consider any document that is excluded pursuant to a timely filed objection. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing whether the court sustains or overrules the objections raised.

13

judgment but shall not consider any document that is excluded pursuant to a timely filed objection." LSA-C.C.P. art. 966(D)(2).

Thus, LSA-C.C.P. art. 966, as amended by Act 317 and as in effect at the time the business filed its "me too" motion in this matter, permitted a moving party to satisfy its burden of proof by referencing documents previously filed into the record. Nevertheless, in this instance, the business's "me too" motion failed to comply with the LSA-C.C.P. art. 966(A)(4)(b) requirement that the documents previously filed into the record be listed "by title and date of filing." It is also unclear whether the business complied with the LSA-C.C.P. art. 966(A)(4)(b) requirement to furnish the court and opposing party a copy of the referenced documents concurrently with the motion. In conducting our *de novo* review of the trial court's judgment, we consider only the admissible summary judgment evidence. See **McDonald**, 385 So.3d at 1167. As set forth above, in this matter, there were no documents filed in support of the business's "me too" motion, and there were no documents referenced in the "me too" motion in the manner required by LSA-C.C.P. art. 966(A)(4)(b) as amended by Act 317. Consequently, there was no admissible summary judgment evidence before the trial court to support the "me too" motion filed by the business. Accordingly, that portion of the trial court's November 8, 2023 judgment granting summary judgment on the issue of liability in favor of the business, and dismissing plaintiff's claims against the business on that basis, is reversed.

## CONCLUSION

For the reasons expressed above, that portion of the November 8, 2023 judgment of the trial court granting summary judgment in favor of Docar Truck Parts & Equipment, Inc. and Docar Powertrain Specialists LLC, and dismissing the claims asserted by Mr. Ferdinand Bonano against Docar Truck Parts & Equipment, Inc. and Docar Powertrain Specialists LLC, is reversed. In all other respects, the judgment is affirmed. One-half of the costs of this appeal are assessed against Mr. Bonano, and one-half of the costs are assessed against Docar Truck Parts & Equipment, Inc. and Docar Powertrain Specialists LLC.

**AFFIRMED IN PART AND REVERSED IN PART.**

14